## No. —

### JUBE PARKER *v.* THE STATE.

1. PERJURY.—INDICTMENT which conforms substantiallly to No. 122 of Willson's Criminal Forms, is sufficient to charge the offense of perjury.
2. PRACTICE—PERJURY—EVIDENCE.—The perjury assigned in this case was that, on the trial of one Hall for murder, the defendant falsely testified that the confession of Hall that he committed the murder, which was proved by the State, was extorted from Hall by the county attorney, by means of threats and intimidation. The defense proposed, on this trial, to prove by the attorneys who defended Hall on his trial, that, a short time after Hall made the purported confession, they went to the jail and found Hall in great distress of mind, and that Hall then told them that the county attorney had threatened him that he would be hung if he did not confess that he committed the murder. *Held*, that under the facts of this case, the exclusion of this proof was error.
3. SAME.—In view of the peculiar facts of this case, the trial court further erred in excluding proof which tended to establish the falsity of Hall's confession, and that, in fact, the murder was committed by other parties.

APPEAL from the District Court of Shelby. Tried below before the Hon. J. I. Perkins.

The conviction was for perjury, and the penalty assessed against the appellant was a term of five years in the penitentiary.

The first evidence introduced by the State was the indictment returned by the grand jury of Shelby county, on the eleventh day of July, 1885, by which indictment one Jack Hall and Jube Parker were charged with the murder of Willis McAdams, on the tenth day of December, 1883. The next evidence introduced was the judgment of the district court of Shelby county, of May 17, 1886, which said judgment recited the trial and conviction of the said Hall, under the said indictment. The State then introduced G. W. Rogers, clerk of the district court of Shelby county, who testified that he administered to the defendant, on the trial of Hall, the oath prescribed by law to be administered to witnesses when called to testify; and that he heard defendant testify on the trial of the said Hall, but could not state the substance of his testimony. He remembered, however, that when the State proposed to prove by Sheriff Sims, the substance of an alleged con-

fession by Hall, the attorneys for Hall objected, and that thereupon, the judge presiding sent the jury from the court room, and the attorneys of Hall placed the defendant on the stand, who proceeded to testify before the judge about the said confession of Hall.

B. F. Sims was the next witness for the State. He testified that he was sheriff of Shelby county, Texas, in May, 1886, and was present at the session of the district court of that county on the seventeenth day of that month, when one Jack Hall was tried for the murder of one Willis McAdams, and heard the testimony of the defendant delivered on that trial. The witness was called to the stand on that trial by the State, to testify to a confession made by the said Hall, when the attorneys for Hall objected to his testimony upon the ground that the confession of Hall, if made at all, was obtained by some of the county officers by coercion and intimidation; and they proposed to support their objection by proof. Thereupon Judge Hazlewood, who presided at that trial, sent the jury from the court room in charge of an officer, and the attorneys for Hall placed the defendant on the stand, and he testified, in substance, as follows: "I was in jail with Jack Hall, charged with him with the murder of Willis McAdams, at the November term of the district court of Shelby county, in 1885, when B. F. Sims, the sheriff, and W. J. Graham, the district attorney, came into the jail, and I heard the defendant, Jack Hall, confess that he and I killed Willis McAdams. B. F. Sims and W. J. Graham came into the jail late at night. We were fixing to go to bed. On the same night, and before Sims and Graham came into the jail, J. A. Lucky, the county attorney, and Charles Smith came into the jail where Jack Hall was confined. It was dark, and Lucky said to Jack Hall that if he did not tell all about the killing of Willis McAdams, that he, the said Jack Hall, would be hung."

Continuing, this witness stated that he did, on one occasion, during November term, 1885, of the court, go with Mr. Graham into that part of the jail where the prisoners were kept, but it was not at night. It was immediately after the adjournment of court in the afternoon. When they went into the jail, Mr. Graham, on meeting Jack Hall, said to him: "Well, Jack, what do you want with me?" Hall replied: "I have concluded to tell you all about the killing of Willis McAdams." Mr. Graham said: "Well, you can tell it if you want to, but I want you to understand that if you make any statement to me that every

word of it may be used in evidence against you, and I will not promise you that I will not use it against you." Hall hung his head and remained silent for a moment, and then replied: "Well, I will tell it, come what may." He then proceeded to tell about the killing of Willis McAdams in Shelby county, Texas; and said, in substance, that he, Jack Hall and Jube Parker went to McAdams's house to kill McAdams, he, Hall, having the gun; that when they reached the house and saw McAdams, he decided not to shoot, and said to Parker: "Jube, I can't do it," when Parker took the gun, remarked, "Give me the gun; by God I can do it," fired, killing McAdams instantly. Hall, in that confession, made a general detailed statement of the circumstances of the killing of McAdams, and as to how he and Parker came to do the killing. Hall and defendant were then confined in the cell in the upper story of the jail, and were never out of that cell during their confinement, except when they were taken to court, and the one time that Hall was taken into witness's office, and that was when he made his confession to Graham. Charles Smith was then jailer, and had a set of jail keys. The witness could not say that Lucky was or was not up stairs in the jail at any time during the said term of court.

Charles Smith was the next witness for the State. He testified that he was jailer in charge of the Shelby county jail during the November term, 1885, of the district court of said Shelby county. He denied that he ever, at any time, day or night, went with J. A. Lucky into that part of the jail which was occupied by prisoners, during the said term of the Shelby county district court. He never, at any time, visited with said Lucky the cell occupied by defendant and Hall, and never, at any time, heard a conversation between Hall and Lucky, in which Lucky told Hall that if he did not tell all about the killing of McAdams, he, Hall, would be hung. Witness frequently saw Lucky go into the lower story of the jail building during the term of the district court in November, 1885, but that story was occupied only by offices. The prisoners, including Hall and defendant, were kept up stairs. One evening during the said term of the district court Eph Fults, who was an assistant about the jail, and sometimes carried the sheriff's set of keys, accompanied by J. A. Lucky, came to witness and said that he would like for witness to go to the cells with Lucky for about thirty minutes. Witness replied that he could not do it, as he had to go to the

country. Fults and Lucky then went into the lower part of the jail, which communicated with the upper part by a stairway. Witness never, at any time saw Lucky and Hall or defendant together in the jail.

W. J. Graham testified, for the State, that he was the district attorney in and for the second judicial district, which included Shelby county, in November, 1885, and as such officer repre- sented the State on the trial of Jack Hall for the murder of Willis McAdams. When court adjourned in the afternoon of one day during that term, an old negro named Dan Greer came to witness and told him that Jack Hall wanted to see him. Wit- ness and Sheriff Sims went into the lower part of the jail, and Sims went up stairs and brought Hall down. Hall then told witness that he wanted to tell him all about the killing of Willis McAdams. Witness told him in reply that he could do so if he wished, but that he must understand that his statement could be used in evidence against him, and that he, witness, would not promise not to use it. Hall reflected a moment, remarked that he would tell, come what may, and made the statement detailed by Sims in his testimony. When, upon the trial of Hall, the witness proposed to prove the confession of Hall, the attorneys for Hall objected, and proposed to support their objection by proof that Hall's confession was obtained by some of the offi- cials by intimidation and coercion. Judge Hazlewood then sent the jury from the court room, and Hall's attorneys placed de- fendant on the stand, and he testified, in support of the objec- tion, as stated by Sims in his testimony. The witness never, at any time, requested county attorney Lucky to confer with Hall about the killing of McAdams, and if he ever did so, it was without the knowledge or connivance of the witness.

Deputy Sheriff Eph Fults testified, for the State, that he never, during the November term, 1885, went into the Shelby county jail with J. A. Lucky, and never, during that term, saw Lucky, or Lucky and Charles Smith in conference with Hall. He was in the lower part of the jail building with Lucky on one occa- sion during that term of court, but that was to attend the grand jury, which was holding its sessions in the lower story of said jail. If Lucky and Charles Smith ever visited Hall together, the witness did not know it.

County Attorney J. A. Lucky was the next witness for the State. He testified substantially as did the witnesses Graham and Sims as to the proceedings on the trial of Hall, so far as the

same involved the testimony of the defendant as a witness on that trial. Defendant, when he testified on the trial of Hall, had been acquitted of the murder of McAdams. This witness denied positively and emphatically that he ever at any time prior to Hall's confession to Graham, went into the jail with Smith, Fults or anybody else, and had a conversation with Hall about the killing of McAdams or about anything else, or that he ever told said Hall that unless he told all about the killing of McAdams he would be hung. He never, at any time or place, either before or after the confession of Hall, said or intimated to Hall that he would be hung or hurt if he did not tell all about the killing of McAdams. On the Saturday morning after the Wednesday or Thursday of Hall's confession to Graham, the grand jury requested witness to go into the jail to see Hall, and witness did so. He was instructed by the grand jury to ask Hall if he would tell them all about the killing of McAdams if he was brought before them. Eph Fults and Dan Greer, the father-in-law of Hall, went into the jail with witness, and witness asked Hall if he would tell about the killing of McAdams if he was brought before the grand jury. He said nothing more to Hall about the McAdams killing. Hall agreed to, and did at once, go before the grand jury, where he was interrogated by witness. The grand jury examined Hall because it was the general belief that another party was concerned with Hall in the killing of McAdams, and it was desired to get testimony upon which such party could be indicted. The witness knew nothing about the confession of Hall until on the night of the day on which it was made, when he heard Graham tell some parties that Hall had made a full confession to him. Eph Fults never at any time, in the presence of witness, proposed to Smith that he, Smith, Fults and witness should go into Hall's cell and spend a half hour.

The State closed.

C. R. Smith, testified, for the defense, that he was sitting under a tree in front of the jail door one evening during the November term, 1885, of the Shelby county district court, when he saw County Attorney Lucky and Deputy Sheriff Fults go into the lower part of the jail building. About the time they reached the door Fults turned and asked witness if he would not go with them into the jail and spend a half an hour. Witness declined. That was prior to the trial of this defendant for the murder of McAdams, but witness was unable to say whether it was before

or after the confession of Hall to Graham and Sims. The lower story of the jail was not then occupied, the grand jury having adjourned for the term.

R. L. Parker testified, for the defense, that in passing the Shelby county jail during the November term, 1885, of the district court, the defendant, who was then confined on the charge of murdering Willis McAdams, hailed witness and requested him to tell lawyers T. C. Davis and F. L. Johnston that their presence was desired at the jail by him and Hall. Davis and Johnston were the attorneys for Hall. Witness went at once to Messrs. Davis and Johnston and informed them of defendant's request. This was before the trial of defendant for the murder of McAdams.

F. L. Johnston testified, for the defense, that he and T. C. Davis were appointed by the court to defend Hall and defendant under the indictment charging them with the murder of Willis McAdams. Some time during the November term, and prior to defendant's trial for the murder of McAdams, R. L. Parker told witness that Hall and defendant wanted to see him at the jail. He accordingly went to the jail and had a conversation with them. Witness did not know whether that was before or after Hall's alleged confession.

Pompey Field testified, for the defense, that he and Hall occupied the same cell in the Shelby county jail during part of the November term of the district court of Shelby county. One evening during that term, while the cells were open to give access to the corridors, J. A. Lucky, the county attorney, came to the corridor and called Hall. He then told witness to retire, as he wanted to talk privately to Hall. Witness stepped back and Lucky and Hall squatted on either side of the corridor wall, and conversed for a time in whispers. Witness did not hear what was said, but after Lucky left, Hall told him that Lucky said that he, Hall, would be hung. Defendant at that time occupied the cell adjoining that occupied by the witness and Hall. Witness was in jail charged with aggravated assault.

Will Clemans, a prisoner confined in the Shelby county jail, testified substantially as did the witness Field; and in addition, that Lucky was in the jail, and conversed in whispers with Hall two or three times on the evening referred to by Field, and that that was the evening of the day on which Hall made the confession to Graham and Sims.

The excluded evidence referred to in the second head note was

the proposed testimony of Johnston and Davis, the attorneys for Hall, on his trial for the murder of McAdams, to the effect that, being sent for by Hall they visited him in the jail about an hour after his alleged confession, and found him, Hall, crying, and in great distress of mind. Hall then told them that county attorney Lucky had called upon him, and told him that if he did not confess that Randall Johnson, a negro suspected of complicity in the murder of McAdams, hired him and Jube Parker to kill McAdams, that he, Hall, would be hung.

The rejected testimony referred to in the third head note was to this effect: By one witness, the defense proposed to prove that Willis McAdams was killed about eight o'clock at night. By several other witnesses the defense proposed to prove that, at that hour, and for several hours before and afterwards, Hall was at a house distant from the scene of the murder of McAdams. Another witness was offered to testify that, a few minutes before the killing of McAdams, two men, one riding a dark colored horse and the other a light colored pony or mule, passed the witness, going towards the house of McAdams; that the witness hailed the parties and asked who they were, and one of them answered "Sam Johnson;" that, on the morning after the killing of McAdams, the tracks of two men were found outside the house of McAdams, and beneath the window through which the fatal shot was fired; that those tracks led to a point where two horses had been hitched on the night before. The tracks of the smaller of those animals showed a broken shoe. A few days thereafter Sam Johnson rode a gray pony into the town of Center, that pony having a broken shoe, which made a track similar to that discovered at the house of McAdams; and that measurement of the track made by Sam Johnson on that day showed it to correspond with one of the tracks near the McAdams murder. The same witnesses proposed to testify that enmity existed, at the time of McAdams's death, between McAdams and Randall Johnson, which grew out of the conduct of McAdams to the said Randall Johnson's wife, and that Sam Johnson was the son of Randall Johnson.

*D. M. Short & Son,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. Whilst the indictment in this case

might have been more explicit in terms, and the allegations more specific, still, we are of opinion that, in the particulars complained of, it is substantially sufficient, both in form and substance. (Willson's Crim. Forms, number 122, p. 68.)

On the trial of one Hall, for the murder of Willis McAdams, this appellant was a witness for Hall, and upon the question raised during the trial as to whether or not a confession made by Hall should be admitted as evidence, this appellant testified that said confession had been induced and procured from Hall by threats and intimidation used to Hall by the county attorney of Shelby county, to compel Hall to make said confession. His testimony in this particular, is the matter which was assigned as perjury in this case, and upon which the prosecution was carried on and the conviction herein had.

In our opinion, the only serious questions presented upon this appeal, are those relating to the exclusion by the court of certain proposed testimony offered in behalf of defendant, and excluded by the court. Defendant proposed to prove by the attorneys who had represented Hall on his trial for the murder of McAdams, that they, the attorneys, about one hour after Hall had made the purported confession, visited Hall in jail, he having sent for them, and there they found Hall crying and in great distress of mind, when he told them in substance, that the county attorney had threatened him that he would be hung if he did not confess to the murder of McAdams. Again, the court excluded evidence offered by this defendant, which would go to prove that the purported confession of Hall to the murder of McAdams, was false in fact, and which evidence would also go to prove that other parties did the killing. In our opinion, the court erred under the peculiar circumstances of this case in both the particulars mentioned.

The evidence as to the intimidation of Hall by the county attorney, whilst positively denied by the latter (and his statement was corroborated by Smith, the other party involved in the transaction), was, nevertheless, on the other hand, supported strongly by circumstances and facts going to establish intimidation. It was certainly, as to the main fact, conflicting, to say the least of it, and it being the exclusive province of the jury alone to determine the weight of the evidence, the excluded evidence might have added such weight as would have induced them to have found otherwise than they did. It would have been a most potent circumstance, and the consequent fact that

it must have been induced by some powerful and improper motive or cause of action, if defendant could have proved to the satisfaction of the jury that the confession Hall had made was absolutely false, or impossible, unreasonable and improbable.

Because the court erred in excluding the testimony, the judgment is reversed and cause remanded.

*Reversed and remanded.*